GOLF CONCEPTS v CITY OF ROCHESTER HILLS

Docket Nos. 180479, 180705. Submitted March 13, 1996, at Lansing. Decided May 31, 1996, at 9:10 A.M. Leave to appeal sought.

Golf Concepts, which operates for profit a golf course on land leased from the City of Rochester Hills, filed in the Michigan Tax Tribunal a petition challenging assessments by the city of real property taxes on the leased land and personal property taxes on buildings and structures at the golf course. The Avondale School District intervened as a respondent. The Tax Tribunal ruled the assessments invalid, determining that the golf course is a concession and is exempt from ad valorem property taxation under the lessee-user tax act, MCL 211.181; MSA 7.7(5), and that the buildings and structures are real property that likewise are exempt from taxation under the lessee-user tax act. The City of Rochester filed two appeals. The appeals were consolidated.

The Court of Appeals *held*:

1. The lessee-user tax act provides that when real property that is exempt from ad valorem property taxation is leased to and used by a private individual, association, or corporation in connection with a business conducted for profit, the lessee or user shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of the property. The act provides an exemption for property that is used as a concession at a public airport, park, market, or similar property and that is available for use by the general public. A concession is a privilege or space granted or leased for a particular use within specified premises and invokes the concept of specific obligations on the part of the privileged party to maintain particular services at specified times and directed toward the fulfillment of a public purpose. Here, the absence in the lease agreement between the petitioner and the city of provisions for minimum hours of operation, standards of service, and oversight of operations by the city militates against a finding that the golf course is a concession. Furthermore, the record is devoid of evidence indicating that the purpose of the golf course was reasonably related to the public purposes of the city.

2. MCL 211.8(d), (h); MSA 7.8(d), (h) provide that, subject to exceptions not applicable in this case, the taxable personal prop-

erty of a lessee includes all buildings and improvements located upon leased lands and leasehold improvements and structures installed and constructed by the lessee. The Tax Tribunal erred in determining that the buildings and structures on the golf course were real property.

Reversed.

1. TAXATION — AD VALOREM PROPERTY TAXATION — LESSEES AND USERS OF TAX-EXEMPT PROPERTY — CONCESSIONS.

When real property that is exempt from ad valorem property taxation is leased, loaned, or otherwise made available to and used by a private individual, association, or corporation in connection with a business conducted for profit, the lessee or user of such property is subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of the real property; an exception applies where the property is used as a concession at a public airport, park, market, or similar property available for use by the general public (MCL 211.181[1],[2][b]; MSA 7.7[5][1],[2][b]).

2. TAXATION — AD VALOREM PROPERTY TAXATION — LESSEES AND USERS OF TAX-EXEMPT PROPERTY — CONCESSIONS.

A person who by virtue of an agreement with a municipality, operates a golf course open to the public on property owned by the municipality does not come within the exception from taxation of lessees and users of tax-exempt property provided for concessions where the agreement does not impose obligations directed toward the fulfillment of a public purpose and lacks terms characteristic of a concession, e.g., minimum hours, standards of service, or oversight of operations by the municipality (MCL 211.181[1],[2][b]; MSA 7.7[5][1],[2][b]).

3. TAXATION — PERSONAL PROPERTY — LESSEES — BUILDINGS AND IMPROVEMENTS.

Buildings and improvements located upon leased lands and leasehold improvements and structures installed and constructed by the lessee, subject to certain exceptions, are part of the personal property of the lessee (MCL 211.8[d],[h]; MSA 7.8[d],[h]).

*Honigman Miller Schwartz and Cohn* (by *Michael B. Shapiro*), for Golf Concepts.

*Beier Howlett, P.C.* (by *John D. Stavan* and *Lawrence R. Ternan*), for City of Rochester Hills.

*Pollard & Albertson, P.C.* (by *Neil H. Goodman* and *Laura M. Hallahan*), for Avondale School District. Amicus Curiae:

*Richard J. Figura,* for Michigan Municipal League.

Before: FITZGERALD, P.J., and CORRIGAN and C. C. SCHMUCKER,* JJ.

CORRIGAN, J. In this property tax dispute, respondent City of Rochester Hills appeals of right the order of the Michigan Tax Tribunal exempting from taxation city-owned property leased by petitioner Golf Concepts. We reverse.

Respondent Rochester Hills owns nearly two hundred acres that petitioner leased in 1986 for thirty-nine years.[1] Petitioner is a private, for-profit corporation that operates the Pine Trace Golf Course on the land. For tax purposes, the property is divided into three parcels: (1) land comprising 110.75 acres—parcel 15; (2) land comprising 76.95 acres—parcel 17; and (3) buildings and improvements made by petitioner—parcel 700. The lease provides that upon termination, petitioner must surrender the property to respondent for no consideration. Respondent must, however, reimburse petitioner for the fair market value of all golf course equipment, maintenance and office equipment, and trade fixtures and furnishings.

For the tax years 1992, 1993, and 1994, respondent determined that the parcels were exempt from ad valorem taxes because the land was owned by

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] The property is located within the district of intervening respondent Avondale School District.

respondent and was used for a public purpose.[2] MCL 211.7m; MSA 7.7(4j). Respondent nonetheless determined that the value of the land was taxable to petitioner under the lessee-user tax act, MCL 211.181; MSA 7.7(5). Under that statute, respondent assessed the two land parcels at $958,000 for the years 1992 through 1994. Respondent found the structures and improvements taxable as personal property under MCL 211.8; MSA 7.8, and assessed parcel 700 at $723,000 for those years.

When petitioner contested the tax assessments, the Michigan Tax Tribunal concluded that parcel 700 was not taxable as personal property. The tribunal ruled that the buildings and improvements of parcel 700 were real property and, because respondent Rochester Hills owned the land and its improvements, the property was exempt from taxation. The Tax Tribunal also determined that parcels 15 and 17 comprised a public park and that petitioner operated the golf course as a concession under MCL 211.181(2)(b); MSA 7.7(5)(2)(b); therefore, the parcels were tax exempt. Respondent appeals.

Respondent first argues that the Tax Tribunal should not have found that the golf course falls within the concession exemption of the lessee-user tax act, MCL 211.181; MSA 7.7(5). Appellate review of Tax Tribunal decisions is limited to deciding if the tribunal's factual findings are supported by competent, material, and substantial evidence. In the absence of fraud, this Court reviews whether the Tax Tribunal made an error of law or adopted an incorrect legal

---

[2] The parties agree that parcels 15 and 17 are exempt from ad valorem taxation under MCL 211.7m; MSA 7.7(4j).

principle. *Gillette Co v Dep't of Treasury*, 198 Mich App 303, 306; 497 NW2d 595 (1993).

The lessee-user tax act provides, in pertinent part:

> When any real property which for any reason is exempt from ad valorem property taxation is leased, loaned, or otherwise made available to and used by a private individual, association, or corporation in connection with a business conducted for profit, *the lessees or users of this real property shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of this real property.* [MCL 211.181(1); MSA 7.7(5)(1) (emphasis added).]

The act seeks to eliminate the unfair advantage that private-sector users of tax-exempt property would otherwise brandish over their competitors who lease property that is privately owned. *Seymour v Dalton Twp*, 177 Mich App 403, 410; 442 NW2d 655 (1989).

An exception to the above statute arises when the property is used as a concession. The lessee-user tax does not apply to "[p]roperty which is used as a concession at a public airport, park, market, or similar property and which is available for use by the general public." MCL 211.181(2)(b); MSA 7.7(5)(2)(b). Therefore, to qualify for the exemption, the golf course must be at a public park and must be used as a concession.

Our Supreme Court has previously ruled that a golf course that was operated by a city recreation department and supported by tax monies fell within the definition of a public park. *Detroit v Oakland Co*, 353 Mich 609, 617; 92 NW2d 47 (1958). Although supported by user fees rather than tax monies, the golf course in this case was "equally available to all members of the public without discrimination." The Tax

Tribunal found that the course was designed for the benefit of the citizens of Rochester Hills. This finding is supported by competent, material, and substantial evidence. The golf course is thus within the definition of a public park.

The question remains whether the golf course is a concession such that petitioner is entitled to a tax exemption. To answer this inquiry, we must interpret the meaning of the lessee-user tax act section quoted above. Statutory interpretation is a question of law subject to review de novo on appeal. *DeKoning v Dep't of Treasury*, 211 Mich App 359, 361; 536 NW2d 231 (1995). This Court customarily defers to the longstanding construction of statutory provisions by a particular department of government. *Bachman v Dep't of Treasury*, 215 Mich App 174, 182; 544 NW2d 733 (1996). Nonetheless, the longstanding interpretation of a statute by the agency that administers it does not control where the agency's interpretation is clearly wrong. *Id.* Further, courts should strictly construe exemption provisions in favor of the taxing unit because an exemption removes the burden on the exempt landowner to share in the support of local government; in essence, "exemption is the antithesis of tax equality." *Michigan Baptist Homes & Development Co v Ann Arbor*, 396 Mich 660, 669-670; 242 NW2d 749 (1976); *Chauncey & Marion Deering McCormick Foundation v Wawatam Twp (After Remand)*, 196 Mich App 179, 182; 492 NW2d 751 (1992).

The primary goal when courts construe statutes is to ascertain and give effect to legislative intent. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 212; 501 NW2d 76 (1993); *State Treasurer v Schuster*, 215

Mich App 347; 547 NW2d 332 (1996). This Court should first look to the specific statutory language to determine the intent of the Legislature. *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). The Legislature is presumed to intend the meaning that the statute plainly expresses. *Vargo v Sauer*, 215 Mich App 389; 547 NW2d 40 (1996). Judicial construction of a statute is not permitted where the plain and ordinary meaning of the language is clear. *Tryc v Michigan Veterans' Facility*, 451 Mich 129; 545 NW2d 642 (1996); *Dep't of Treasury v Comerica Bank*, 201 Mich App 318, 322; 506 NW2d 283 (1993).

In *Detroit v Tygard*, 381 Mich 271; 161 NW2d 1 (1968), our Supreme Court analyzed the term "concession" in the statute that preceded the statute at issue in this case. The Court first examined the dictionary definition, which at that time provided that a concession was "[a] privilege or space granted or leased for a particular use within specified premises."[3] The Court noted that a privilege exclusively granted is distinguishable from a more general type of permissive use. The Court added that a concession invoked "the concept of specific obligation on the part of the privileged party to maintain particular services at specified times." *Id.* at 275. The Court stated that in return for the granted privilege, an obligation necessarily arises. *Id.* at 276.

---

[3] More recently, the word "concession" has been defined as "something conceded by a government or a controlling authority, as a grant of land, a privilege, or a franchise." An alternative definition is "a space or privilege within certain premises for a subsidiary business or service." *Random House Webster's College Dictionary* (1995), p 281.

This Court has already grappled with this same issue in *Seymour, supra.* In that case, the respondent township granted the petitioner the right to the exclusive use, control, and operation of a golf course on property owned by the township. This Court decided that the petitioner had not established that the golf course was a concession, although the parties' agreement specifically reflected their intent to structure the course as a concession. The agreement also provided that the petitioner could terminate the agreement if the exemption from the lessee-user tax was not realized. *Id.* at 406.

The Court in *Seymour* decided that the golf course was not a concession because the agreement did not impose obligations and restrictions upon the petitioner that were stated with specificity. The Court noted that conspicuously absent were requisite terms, such as (1) minimum hours, (2) standards of service, or (3) oversight of operations by the city. The Court stated that the petitioner had an "unacceptable degree of discretion" to run the course, and did not have "the imposition of obligations directed toward the fulfillment of a public purpose." *Id.* at 409.

Additionally, the Court addressed whether a concession must be incidental to, and subsumed by, the larger public purpose of the granting governmental entity. *Id.* at 409-410. The Court stated that the concessionaire is required to offer services that have a reasonable relationship to the purposes of the granting entity. If that entity merely privatizes its entire operation, then a tax exemption would be contrary to the broader purpose of the lessee-user tax. *Id.* at 410.

In this case, the Tax Tribunal erred as a matter of law in ruling that the golf course was a concession.

The provisions in the lease contract between the parties do not rise to the level of specific obligations on the part of petitioner, the privileged party, to maintain particular services at specified times. The provisions do not include requirements for minimum hours of operation, for petitioner's standards of service, or for respondent's oversight of the golf course operations. While the lease provisions demonstrate that respondent had some control over the operations, the provisions address broader management issues rather than specific obligations. For example, the lease in this case provides that respondent has the right to change the prices charged by petitioner. The *Seymour* Court observed, however, that the "[o]versight of fees charged to the public is not strenuous." *Id.* at 409. Likewise, in this case respondent had the right to inspect and regulate the maintenance of the property. The *Seymour* Court stated that the maintenance was consistent with the city's goal in protecting the property and that it did not exact a specific term or service for the public benefit. *Id.*

Also, the record does not contain evidence that the purpose of the golf course was reasonably related to the public purposes of respondent city. It appears that respondent merely privatized the operation of the golf course, thereby permitting petitioner to have an unfair advantage over entities leasing privately owned property. Granting a concession exemption to petitioner's golf course would thus be contrary to the purpose of the lessee-user tax act. Given our resolution of this issue, we need not address whether a concession can comprise the entirety of a privatized, city-owned operation, an issue the parties raised in their supplemental briefs.

Respondent next contends that the Tax Tribunal incorrectly determined that the buildings and leasehold improvements constituted real property. Michigan statutory law provides for a tax exemption for property owned by local governmental units and agencies. MCL 211.7m; MSA 7.7(4j). Respondent asserts that the tribunal should have ruled that the improvements were petitioner's personal property. Personal property owned by a lessee is not tax exempt, as provided in the following statute:

> For the purposes of taxation, personal property shall include:
>
> *       *       *
>
> (d) All buildings and improvements located upon leased lands, except where the value of the real property is also assessed to the lessee or owner of those buildings and improvements.
>
> *       *       *
>
> (h) During the tenancy of a lessee, leasehold improvements and structures installed and constructed on real property by the lessee, provided and to the extent the improvements or structures add to the true cash value of the real property notwithstanding that the real property is encumbered by a lease agreement, and the value added by the improvements or structures is not otherwise included in the assessment of the real property or not otherwise assessable under subdivision (j). The cost of leasehold improvements and structures on real property shall not be the sole indicator of value. Leasehold improvements and structures assessed under this subdivision shall be assessed to the lessee. [MCL 211.8(d),(h); MSA 7.8(d),(h).]

Consistent with the above statute, the improvements to the property constitute personal property for tax purposes. *Kalamazoo Aviation History Museum v*

*City of Kalamazoo*, 131 Mich App 709, 712, n 2; 346 NW2d 862 (1984). The Legislature designed the above statute to collect taxes on buildings located on leased lands:

> The obvious purpose of the Legislature in the enactment of the above statute was to reach for taxation buildings erected on state lands, such as airports, federal and state lands or any other lands where title to the underlying properties remains in the owners and the use is granted by, usually, long-term ground leases. The purpose of this statute is not to define what is personal property. [*Dick & Don's Greenhouses, Inc v Comstock Twp*, 112 Mich App 294, 298; 315 NW2d 573 (1982).]

Also, the Legislature did not provide an exemption for buildings on leased property–had it so intended, it would have done so expressly. *Id.* at 300. As in *Dick & Don's*, a strained construction would result if this Court decided that petitioner's buildings on land leased from Rochester Hills were exempt from tax while petitioner's competitors' buildings were not exempt. *Id.*

Moreover, the parties' lease contains the following section regarding taxes:

> *Section 5.5 Taxes:*
> The premises under this Lease are owned by the CITY, have been removed from the tax rolls and are not subject to taxation. However, it is contemplated that LESSEE shall be subject to taxation upon all personal property owned by LESSEE and used on or in connection with the leased premises. LESSEE covenants to pay such taxes as may be lawfully assessed against such personal property. Any improvements to the premises made by the CITY shall not impose any additional personal property taxes on the LESSEE.

The quoted language indicates that petitioner is responsible for paying taxes on personal property improvements. Improvements made by Rochester Hills, however, are not chargeable to petitioner. It stands to reason, then, that petitioner is responsible for paying taxes on improvements that it makes. Petitioner made the improvements that constitute parcel 700; hence, under the lease, it is responsible for taxes, provided that the improvements are designated personal property for tax purposes.

Apart from a brief reference, the Tax Tribunal did not analyze the above statute defining personal property for tax purposes. Rather, relying on *Skybolt Partnership v Flint*, 205 Mich App 597; 517 NW2d 838 (1994), the Tax Tribunal determined that petitioner's buildings and improvements were real property owned by respondent and thus were exempt from taxation. In *Skybolt*, the City of Flint leased property at an airport to the petitioner. The lease required the petitioner to make permanent improvements that would become Flint's property at the end of the lease. The petitioner built three hangars and office space. The tribunal ruled that the improvements were real property owned by Flint, and that they were exempt from taxation. *Id.* at 599. This Court affirmed the tribunal's holding that the improvements were real property. The Court cited *Air Flite & Serv-A-Plane v Tittabawassee Twp*, 134 Mich App 73; 350 NW2d 837 (1984). *Air Flite* relied on the statutory and common-law rule that "buildings placed upon real property become a part of the real property" and the "bundle of sticks" concept of ownership. The *Skybolt* Court also noted that the improvements were Flint's property because Flint exerted ultimate control over the

property and because the petitioner's rights as a lessee were strictly limited. *Skybolt, supra* at 600.

*Skybolt* is distinguishable from this case because respondent does not exert ultimate control of the property, and because petitioner's rights as a lessee are not strictly limited. Although petitioner must surrender the property to respondent at the termination of the lease, respondent does not presently have ultimate control over the property. Also, the lease did not strictly limit petitioner's rights as a lessee. Rather, the lease provided petitioner a high degree of independence in operating the golf course and managing the property. Moreover, neither *Skybolt* nor *Air Flite* considered in any detail MCL 211.8; MSA 7.8, which directly affects the decision se.

Respondent finally argues that petitioner's buildings and improvements, even if not taxable as personal property under MCL 211.8; MSA 7.8, are taxable as personal property under MCL 211.14(5); MSA 7.14(5), which states:

> Tangible personal property under the control of a trustee or agent, whether a corporation or a natural person, may be assessed to such trustee or agent in the township where he resides, except as otherwise provided. Personal property mortgaged or pledged shall be deemed the property of the person in possession thereof and may be assessed to him, and personal property not otherwise taxed under this act which is in the possession of any person, firm or corporation using same in connection with a business conducted for profit shall be deemed the property of such person for taxation and assessed to him accordingly.

This section *presumes* that the property at issue is personal property. The statute provides no assistance in the determination whether the property is personal

or real. Thus, the statute does not answer the issue in this case: whether parcel 700 comprises personal or real property for tax purposes. If the property is real, then the above statute does not apply. If the property is personal, then petitioner is responsible for taxes under MCL 211.8(d),(h); MSA 7.8(d),(h). Accordingly, the above section is not material to this case.

Reversed.