AMERICAN GOLF OF DETROIT v CITY OF HUNTINGTON WOODS

Docket No. 193385. Submitted May 6, 1997, at Detroit. Decided August 29, 1997, at 9:05 A.M. Leave to appeal sought.

American Golf of Detroit, a for-profit copartnership that operates the Rackham Golf Course owned by the City of Detroit and located in the City of Huntington Woods, petitioned the Tax Tribunal, seeking a determination that Huntington Woods had improperly assessed the petitioner for ad valorem real property taxes relating to the public golf course. The Tax Tribunal granted summary disposition for Huntington Woods, finding that the petitioner did not use the property as a concession and therefore was not entitled to use the concession exemption to the lessee-user tax, MCL 211.181(2)(b); MSA 7.7(5)(2)(b). The petitioner appealed.

The Court of Appeals *held*:

1. The Tax Tribunal had jurisdiction to determine whether the value of the golf course property was taxable to the petitioner or whether the petitioner was exempt from taxation as the operator of a concession.

2. The Tax Tribunal erred in its application of the law in deciding that the petitioner did not operate a concession solely because its operation of the golf course involved the entire parcel of real property. The relevant inquiry is whether the City of Detroit specifically retained a sufficient degree of control over the petitioner's operation of the golf course for such operation to constitute a concession or instead relinquished meaningful control and thereby privatized the operation of the golf course.

3. The Tax Tribunal's finding that the petitioner's operation encompassed the entire golf course operation is not supported by the evidence. The tribunal's order must be vacated and the matter must be remanded for further proceedings.

Vacated and remanded.

1. TAXATION — AD VALOREM PROPERTY TAXATION — LESSEES AND USERS OF TAX-EXEMPT PROPERTY — CONCESSIONS — MUNICIPAL GOLF COURSES.

When real property that is exempt from ad valorem property taxation is leased, loaned, or otherwise made available to and used by a private individual, association, or corporation in connection with a business conducted for profit, the lessee or user of such property is

subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of the real property; an exception applies where the property is used as a concession at a public airport, park, market, or similar property available for use by the general public; a city-owned golf course that is available to the public is a public park for purposes of this exception (MCL 211.181[1],[2][b]; MSA 7.7[5][1],[2][b]).

2. TAXATION — LESSEES AND USERS OF TAX-EXEMPT PROPERTY — EXEMPTIONS — WORDS AND PHRASES — CONCESSIONS.

A "concession" for purposes of the exemption in the lessee-user tax act regarding the operation of a concession at a public park is a privilege or space granted or leased for a particular use within specified premises; incident to a concession is the concept of specific obligations on the part of the concessionaire to maintain particular services under specified terms and standards, which obligations must bear a reasonable relationship to the purposes of the facility being operated; a relevant inquiry is whether the owner of the property leased to the concessionaire retained a sufficient degree of control over the concessionaire's operation to constitute a concession or instead relinquished meaningful control and thereby privatized the operation (MCL 211.181[1],[2][b]; MSA 7.7[5][1],[2][b]).

*Honigman Miller Schwartz and Cohn* (by *Michael B. Shapiro* and *John S. Kane*), for the petitioner.

*Oakland County Corporation Counsel* (by *Donald F. Slavin*, Assistant Corporation Counsel), for the respondent.

Before: HOLBROOK, JR., P.J., and MACKENZIE and MURPHY, JJ.

PER CURIAM. This is a property tax dispute. Petitioner appeals as of right from an order granting summary disposition in favor of respondent and affirming respondent's tax assessment on property leased by petitioner. We vacate and remand.

Petitioner, a for-profit private copartnership, operates several public golf courses in the Detroit area, including the Rackham Golf Course, the subject of

this case. Rackham is owned by the City of Detroit and is located in respondent City of Huntington Woods. Petitioner operates the course pursuant to a January 2, 1991, "Concession Agreement" with the City of Detroit.

Consistent with MCL 211.7m; MSA 7.7(4j), respondent treated Rackham as exempt from real property taxation through 1992 because it was owned by a city and used to carry out a public purpose. Beginning with the 1993 tax year, however, the property was placed on respondent's tax rolls. This case, along with a case brought by the City of Detroit, followed. In the City of Detroit's case, respondent acknowledged that the City of Detroit was exempt from taxation. The Tax Tribunal concluded that "[t]he proper party for purposes of assessment and the levying of a tax is American Golf of Detroit [under subsection 1(1) of the lessee-user tax act, MCL 211.181(1); MSA 7.7(5)(1)], which may also be exempt from taxation pursuant to MCL 211.181(2)(b) [; MSA 7.7(5)(2)(b)]."

At all times pertinent to this case, subsection 1(1) of the lessee-user tax act provided:

> When any real property which for any reason is exempt from ad valorem property taxation is leased, loaned, or otherwise made available to and used by a private individual, association, or corporation in connection with a business conducted for profit, the lessees or users of this real property shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of this real property.

There are several exceptions to the lessee-user tax, including an exception for "[p]roperty which is used as a concession at a public airport, park, market, or similar property and which is available for use by the

general public." MCL 211.181(2)(b); MSA 7.7(5)(2)(b).
A city-owned golf course, available to the public, is a
public park for purposes of this exception. See *Golf
Concepts v Rochester Hills*, 217 Mich App 21, 25-26;
550 NW2d 803 (1996).

Petitioner contended that its operation of Rackham
Golf Course qualified it for exemption from taxation
as a concession. The Tax Tribunal held that petitioner
did not use the property as a concession and accord-
ingly concluded that it was not entitled to the conces-
sion exemption to the lessee-user tax.

As a threshold matter, petitioner argues on appeal
that the Tax Tribunal lacked authority to effectively
impose a lessee-user tax on it, because the tax
imposed by respondent and challenged by petitioner
was an ad valorem real property tax. Throughout the
Tax Tribunal proceedings, petitioner continually
asserted that it was exempt from the lessee-user tax
under MCL 211.181(2)(b); MSA 7.7(5)(2)(b). In light of
respondent's attempt to tax the value of the land to
petitioner and petitioner's reliance on the concession
exemption to the lessee-user tax in challenging the
imposition of a tax—and because the lessee-user tax
is imposed "in the same amount and to the same
extent" as real property taxes—we conclude that the
Tax Tribunal had jurisdiction to determine whether
the value of the golf course property was taxable to
petitioner or whether petitioner was exempt from tax-
ation as the operator of a concession. See MCL
205.731(a); MSA 7.650(31)(a).

In a series of related arguments, petitioner also
claims that the Tax Tribunal erred in concluding that
it was not operating a concession, and hence was not
exempt from taxation under the lessee-user tax act.

Appellate review of a Tax Tribunal decision is limited to deciding if the tribunal's factual findings are supported by competent, material, and substantial evidence. In the absence of fraud, this Court reviews the tribunal's decision to determine whether it erred in applying the law or adopted a wrong principle. *Kalamazoo v Richland Twp*, 221 Mich App 531, 535; 562 NW2d 237 (1997); *Golf Concepts, supra*, pp 24-25. In this case, we conclude that the tribunal erred in its application of the law when it decided that petitioner did not operate a concession.

What constitutes a concession under the lessee-user statute has been the subject of several cases in this state. In *Detroit v Tygard*, 381 Mich 271, 275; 161 NW2d 1 (1968), our Supreme Court defined a concession as a " 'privilege or space granted or leased for a particular use within specified premises.' " (Citation omitted.) See also *Kent Co v Grand Rapids*, 381 Mich 640, 651; 167 NW2d 287 (1969). Incident to a concession is the concept of specific obligations on the part of the concessionaire to maintain particular services under specified terms and standards. *Tygard, supra*, p 275. These obligations must "bear a reasonable relationship to the purposes" of the facility being operated. *Id.*, p 276.

Like this case, *Seymour v Dalton Twp*, 177 Mich App 403, 410; 442 NW2d 655 (1989), involved a city-owned public golf course operated by a private manager. The *Seymour* Court held that the Tax Tribunal properly found that the city did not grant the manager, Seymour, a concession:

> The agreement does little to impose obligations and restrictions upon Seymour stated with the requisite degree of specificity. Terms of an agreement characteristic of a

concession, e.g., minimum hours, standards of service, or oversight of operations by the city, are conspicuously absent. Oversight of fees charged to the public is not strenuous . . . . The maintenance requirement . . . does not appear to be directed toward exacting some specific term or service for the public benefit. Seymour had an unacceptable degree of discretion to run the golf course and related facilities as he saw fit, without the imposition of obligations directed toward the fulfillment of a public purpose. [*Id.*, p 409.]

In addition to the criteria supplied by *Tygard* and *Kent Co, supra,* the *Seymour* Court indicated that, to constitute a concession, the venture should be a subsidiary business incidentally related to a public-oriented operation, rather than a privatized, self-contained operation. *Id.*, pp 409-410.

Similarly, in *Golf Concepts, supra,* this Court looked to the provisions in the lease agreement between the city that owned a public golf course and the lessee of the course. The *Golf Concepts* Court concluded that the city merely privatized the operation of its golf course and therefore did not grant a concession for purposes of the lessee-user tax. This Court stated:

The provisions in the lease contract between the parties do not rise to the level of specific obligations on the part of petitioner, the privileged party, to maintain particular services at specified times. The provisions do not include requirements for minimum hours of operation, for petitioner's standards of service, or for respondent's oversight of the golf course operations. While the lease provisions demonstrate that respondent had some control over the operations, the provisions address broader management issues rather than specific obligations. [*Golf Concepts, supra,* p 29.]

Most recently, in *Kalamazoo, supra,* this Court concluded that management agreements between the city that owned a public golf course and the entity managing the course created a concession under the lessee-user tax act. As in *Tygard, Kent Co, Golf Concepts,* and *Seymour, supra,* the *Kalamazoo* Court looked to the terms of the management agreements to determine whether the city had granted a concession. The Court determined that "[t]he specificity of the management agreements satisfied the requirement of specific obligations to maintain particular services at specified times." *Kalamazoo, supra,* p 539. The Court acknowledged that merely privatizing the operation of the golf course would be contrary to the purpose of the lessee-user tax, but concluded that in contrast to *Seymour* and *Golf Concepts, supra,* the city did not simply privatize the operation of the course. Rather, the extensive oversight retained by the city in the management agreements demonstrated the absence of privatization. *Id.*

In this case, the Tax Tribunal did not look to the terms of the concession agreement between the City of Detroit and petitioner to determine whether the agreement granted a concession within the meaning of the lessee-user tax act. Rather, the tribunal believed that the determination

> requires revisiting the concession exemption provision, which states that the lessee-user tax does not apply to:
>
> "Property which is used as a concession *at* a public airport, park, market, or similar property and which is available for use by the general public."
>
> . . . [I]n providing an exception from taxation for "a concession *at* a public airport, park, market or similar property," the legislature intended that a concession embody

less than the whole of any of the described public functions.[5] [Emphasis in original.]

---

[5] Had the legislature intended that a "concession" embody the whole of a "public airport, park [including golf course], market or similar property," then it could have said so, by adding the emphasized language:

Property which is used as a concession at, *or including*, a public airport, park, market, or similar property . . . . [Emphasis in original.]

---

On the basis of the body of case law discussing what constitutes a concession for purposes of the lessee-user tax act, we are of the opinion that the Tax Tribunal misapplied the law in this case in determining that petitioner's operation of Rackham Golf Course was not a concession solely because it involved the entire parcel of real property. "At" is merely a preposition used to indicate a location; it implies neither "at the entire location" or "at a portion of a location." Instead, the relevant inquiry was whether the City of Detroit specifically retained a sufficient degree of control over petitioner's operation of the golf course to constitute a concession as in *Kalamazoo, supra,* or instead relinquished meaningful control and thereby privatized the operation of the golf course as in *Seymour* and *Golf Concepts, supra.* The Tax Tribunal erred as a matter of law in not considering these factors and in basing its decision solely on a finding that petitioner's management of the entire golf course precluded it from being a concession.

Further, it should be noted that even if the Tax Tribunal was correct in its ruling that the concession exemption does not apply to the operation of an entire airport, park, or golf course, it appears that petitioner in this case did not manage the entire

Rackham property. According to the concession agreement between the City of Detroit and petitioner, Rackham's clubhouse/snack bar/refectory was operated by the city itself. Because petitioner did not manage the entire golf course operation, it appears that the tribunal's finding that petitioner's operation comprised the entire golf course operation was not supported by the evidence.

In light of the Tax Tribunal's legal and factual errors, we vacate its order holding that petitioner was not entitled to the concession exemption to the lessee-user tax. Moreover, because the extent of the City of Detroit's control, supervision, and oversight of golf course operations was not fully developed and was not addressed by the tribunal, we remand the case for further proceedings. On remand, the Tax Tribunal shall determine whether, on the basis of the degree of supervision and control retained by the City of Detroit and the imposition of specific obligations, as enunciated in *Tygard, supra,* and applied in *Seymour, Golf Concepts,* and *Kalamazoo, supra,* the operation of Rackham Golf Course is a concession entitling petitioner to exemption from the lessee-user tax.

Vacated and remanded. We do not retain jurisdiction.